IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH LEE LEWIS, #142696, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:16-CV-907-WKW |
| | ) (WO) |
| | ) |
| CORIZON HEALTH, | ) |
| | ) |
| Defendant. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Joseph Lee Lewis ("Lewis"), a convicted state inmate, in which he challenges the adequacy of medical treatment provided to him for treatment of Hepatitis C during his confinement in the custody of the Alabama Department Corrections. Doc. 1 at 2–3.  Lewis names Corizon Health, the contract medical care provider for the state prison system, as the sole defendant in this cause of action.  Lewis seeks declaratory and injunctive relief for the alleged violation of his constitutional rights.

The defendant filed a special report and relevant evidentiary materials in support of its report addressing the claim presented by Lewis.  In these filings, the defendant denies it acted with deliberate indifference to Lewis' medical needs.  After receipt of the defendant's special report, the court issued an order directing Lewis to file a response to the report, supported by affidavits or statements made under penalty of perjury and other

1

evidentiary materials. Doc. 12 at 2. The order specifically cautioned Lewis that "**unless within fifteen (15) days form the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 12 at 3. Pursuant to this order, the court deems it appropriate to treat the defendant's report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendant.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue

[dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendant has met its evidentiary burden. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a

reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Lewis has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant.

### III. DISCUSSION

Lewis complains that Corizon denied him medication and did not otherwise undertake appropriate measures for treatment of his Hepatitis C. Corizon adamantly denies

that it or any of its employees acted with deliberate indifference to Lewis' condition. In support of this assertion, the defendant maintains that Lewis had continuous access to medical treatment provided by health care personnel. The defendant further asserts that medical personnel routinely evaluated Lewis regarding his Hepatitis C, conducted diagnostic tests to aid in determining necessary treatment, assessed his need for treatment, and provided treatment in accordance with their professional judgment.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must, at a minimum, show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

At least within the Eleventh Circuit, medical malpractice does not equate to deliberate indifference:

> That medical malpractice—negligence by a physician [or nurse]—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were

5

> intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L. Ed. 2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). As to the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even

'[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting *Hill*, 40 F.3d at 1187). In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things[:] 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at

> 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (holding that, to show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law").

Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotations omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th

8

Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

The evidentiary materials filed by the defendant address the claim made by Lewis challenging the constitutionality of the medical treatment provided for his Hepatitis C. As discussed below, a thorough review of these documents demonstrates that the affidavit submitted by the defendant with respect to the material facts is corroborated by the contemporaneously compiled objective medical records. The law is well settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).

Dr. Hugh Hood, the Regional Medical Director for Corizon, addresses the claim raised by Lewis as follows:

> Hepatitis C is a contagious liver disease that can lead to serious problems including cirrhosis (scarring of the liver) and liver cancer. Acute Hepatitis C lasts a short time and occurs within the first six months of exposure to the Hepatitis C virus. In some cases, the body can get rid of the virus on its own. If not, the infection can become chronic. Chronic Hepatitis C is serious and long lasting. Hepatitis C is a blood-borne virus, spread by blood-to-blood contact. Even a very small amount of infected blood that cannot be seen can transmit the virus. Hepatitis C can be diagnosed through two tests. The first is the antibody test which shows whether the individual has ever been exposed to the Hepatitis C virus. The second is the viral load test, also known as the HCV-RNA test. The viral load test can tell if the virus is currently in the individual's blood and can also be utilized to confirm a diagnosis and also be used to monitor the individual's progress with the virus.
> Attached hereto is the medical chart of Joseph Lee Lewis. The medical records indicate that at one point in time Mr. Lewis had tested positive for the Hepatitis C virus. Mr. Lewis' blood was regularly checked

> during his incarceration with the Alabama Department of Corrections. However, prior to Mr. Lewis being released from his incarceration with the Alabama Department of Corrections [on December 6, 2016], Mr. Lewis' liver function test returned to normal.
>   Therefore, Mr. Lewis was in a class of individuals whose body may have rid itself of the Hepatitis C virus. A repeat viral load was not done before he was paroled.
>   Mr. Lewis was closely monitored during his incarceration with the Alabama Department of Corrections to determine whether in fact he would be a candidate for Hepatitis C treatment. However, as stated above, blood tests performed on Mr. Lewis suggested that his body had rid itself of the Hepatitis C virus and therefore Mr. Lewis was in fact not a candidate for Hepatitis C treatment.
>   Mr. Lewis condition was never ignored and necessary medical treatment for Mr. Lewis was at no time denied or delayed.
>   Mr. Lewis was carefully monitored during his incarceration with the Alabama Department of Corrections and his medical condition closely monitored and regularly tested.

Doc. 11-1 at 3–4. The affidavit submitted by Dr. Hood is corroborated by the objective medical records contemporaneously complied during the treatment process, as explained below.

Under the circumstances of this case, the court concludes that the actions of the defendant did not violate Lewis' constitutional rights. Specifically, neither the defendant nor its employees acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Rather, the evidence before the court demonstrates that Lewis had continuous access to medical treatment from health care personnel employed by Corizon through the sick call process and chronic care clinic appointments. Doc. 11-1 at 8–44 & 54–58. Moreover, Lewis received regular blood tests in order to monitor his Hepatitis C. Doc. 11-1 at 46–52. As a result, the court concludes that Lewis' treatment did

not constitute deliberate indifference. Lewis' self-serving claims of lack of due care and deliberate indifference do not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x at 403 (11th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same). In addition, Lewis has failed to present any evidence showing that the manner in which medical personnel addressed his condition created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence—significantly probative or otherwise—showing that the defendant acted with deliberate indifference to any serious medical need experienced by Lewis. Consequently, summary judgment is due to be granted in favor of the defendant. *Carter*, 352 F.3d at 1350.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment be GRANTED.
2. Judgment be GRANTED in favor of the defendant.
3. This case be DISMISSED with prejudice.
4. The costs of this proceeding be taxed against the plaintiff.

It is further ORDERED that on or before **February 24, 2017** the parties may file objections to this recommendation. A party must specifically identify the factual findings and legal conclusions in the recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 10th day of February, 2017.

                                                /s/ Gray M. Borden
                                    UNITED STATES MAGISTRATE JUDGE